**Frances M. McCOBB, Executrix of the Estate of Thomas C. McCobb**

v.

**Harold R. ALL, District Director of Internal Revenue, District of Connecticut.**

**Civ. No. 7685.**

United States District Court
D. Connecticut.

July 16, 1962.

Pullman, Comley, Bradley & Reeves by William Reeves, Bridgeport, Conn., for plaintiff.

Thomas F. Field, Department of Justice, Washington, D. C., for defendant.

BLUMENFELD, District Judge.

When Thomas C. McCobb retired as an executive of the Standard Oil Company of New Jersey in 1944, he became entitled to receive a "retirement allowance" under an "Annuity Plan for the Employees of Standard Oil Company (New Jersey) and its Participating Subsidiaries Effective January 1, 1932" [Annuity Plan]. Briefly, this was a plan covering all employees meeting certain past service requirements, funded by annual contributions of the company. McCobb also became a participant in the "Supplemental Annuities" portion of the plan which enabled him to augment his retirement allowance at the joint expense of the company and himself. His contributions under this part were in the form of payroll deductions. This portion of the plan was also funded. Neither party claims that this was a "qualified plan" within the requirements of § 401, I.R.C.1954, 26 U.S.C.A. § 401. Other details of the Annuity Plan need not be considered. The parties do not question that it provided annuities for the participants.

In 1941, during McCobb's employment, the company adopted a "Death Benefit Plan for Annuitants of the Standard Oil

Company (New Jersey) and its Domestic Participating Subsidiaries" [Death Benefit Plan] as a program for supplementing governmental benefits to dependents of those employees who had retired and thereby became entitled to receive retirement allowances as "annuitants" under the Annuity Plan. McCobb became an "annuitant" in 1944.

The Death Benefit Plan was unfunded. It was " * * * adopted as a program for supplementing benefits provided by law * * * ", and the cost was borne wholly by the company. By virtue of a provision in the Death Benefit Plan (Part VII) reserving the right of change, termination or cancellation of ratification, the company terminated that plan as to anyone who became an "annuitant" after July 1, 1947. Payments under the Death Benefit Plan amounted to twelve times the monthly retirement allowance less the government benefits provided by law to the following classes of surviving beneficiaries, in preferential order: (1) Widow; (2) Minor children, in equal shares; (3) Parents, in equal shares; and thereafter other dependent relatives. A qualification for each class is that the beneficiary was either living with the retired employee or receiving support from him to the extent of at least 20% of his retirement allowance.

The question presented by the cross-motions for summary judgment in this action by the estate for a refund of estate taxes paid upon that portion of the gross taxable estate attributable to the addition thereto of the sum of the payments made under the Death Benefit Plan to the widow of McCobb for a period of one year after his death is whether the Commissioner's action was proper in requiring those payments to be included in her husband's gross estate for assessment of taxes thereon.

The contentions of the parties center upon an interpretation of § 2039, a new section added to the 1954 Code, which had no counterpart in the old Code. The pertinent subsections are as follows:

"(a) General.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

"(b) Amount includible.—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment."

At the outset, it is desirable to consider whether the sum of the payments made to the widow, who qualified as a dependent of the decedent, was "an annuity or other payment" within the meaning of those words in § 2039, leaving aside for the moment the question whether the payments were receivable under "any form of contract or agreement." By specifically qualifying the payments receivable as those "(other than as insurance under policies on the life of the decedent)", the statute on its face makes a distinction between life insurance proceeds and "an annuity or other payment." Additional support for the view that the framers of the statute were concerned primarily only with taxing the remaining value of a joint and survivor annuity to which a decedent was entitled

by reason of premature death is found in the opening paragraph of the House Committee Report, which reads as follows:

> "Under present law the value at the decedent's death of a joint and survivor annuity purchased by him is includible in his gross estate. It is not clear under existing law whether an annuity of that type purchased by the decedent's employer, or an annuity to which both the decedent and his employer made contributions is includible in the decedent's gross estate."

The payments to Mrs. McCobb were functionally "insurance" because the payments in this case were designed to provide partial protection for one year to her as a dependent beneficiary against loss of retirement allowances to her husband through his untimely death. This is hardly the case of a typical survivorship annuity which is designed to return premiums paid plus interest to the primary annuitant and his designated survivor through the duration of their life expectancies. See Ackerman, Insurance, 3 RETIREMENT, p. 56 (3rd Ed. 1948). The payments made in this case did not become payable until after McCobb died.[1] Until that time, the company had contributed nothing to him under the Death Benefit Plan and he had received no right to obtain anything under it. Cf. Morse v. Commissioner of Internal Revenue, 2 Cir., 1953, 202 F.2d 69.

While the statute does read "insurance under policies", case law has

approved employer insurance payments as "insurance." See Commissioner of Internal Revenue v. Treganowan, 2 Cir., 1950, 183 F.2d 288, cert. den. 340 U.S. 853, 71 S.Ct. 82, 95 L.Ed. 625. Even if the plans are read together[2] as a combination life insurance—annuity plan, the life insurance payments are clearly and easily segregated. The character of these payments is critical for estate taxation. Ordinarily, estate tax treatment of employee death benefits will depend upon their identification as either "annuities" or "life insurance" within §§ 2039 and 2042 respectively. The existence of different tax treatment emphasized by the parenthetical reminder in § 2039 suggests that denial of "insurance status" to employer paid benefits is not to be lightly undertaken. The Federal Tax Regulations recognize the distinction:

> "INSURANCE UNDER POLICIES ON THE LIFE OF THE DECEDENT. If an annuity or other payment receivable by a beneficiary under a contract or agreement is in substance the proceeds of insurance under a policy on the life of the decedent, section 2039(a) and (b) does not apply. For the extent to which such an annuity or other payment is includible in a decedent's gross estate, see section 2042 and § 20.-2042–1." F.T.R. 1960, 20.2039–1 (d).[3]

The payments to Mrs. McCobb were not properly included in the decedent's gross

---

[1] On the contrary, under Part V, Section 4(b), of the Annuity Plan, McCobb had the option when he retired of receiving a reduced supplemental annuity which was derived from his own contributions and if the payments thereunder, until the time of his death, amounted to less than his own contributions and allowed interest accumulated to the date of his retirement, the difference would be refunded to his designated beneficiary or his estate. The contributions made by the company, whether wholly under the regular annuity, or in part toward the supplemental portion, was not payable to anyone in the event of any "annuitant's" premature

death; presumably that amount (actuarily determined according to the Annuity Plan) was retained by the company for allocation among other annuitants who might outlive their life expectancies.

[2] There is no inter-related obligation in the two plans. The Annuity Plan is referred to in the Death Benefit Plan for no other purpose than to identify an "annuitant."

[3] The regulation goes on to discuss a method of analyzing a "retirement income" policy, with death benefits based upon a terminal reserve figure for determining when such a policy contract may no longer have an insurance element. In the pres-

taxable estate as being "an annuity or other payment" under § 2039(a).

Turning next to § 2042 I.R.C.1954 to consider whether the death benefits paid to Mrs. McCobb were taxable in the estate under the provisions of § 2042, the

test now becomes whether the decedent had any control over the right to receive the Death Benefit Plan proceeds at his death. The portions of the Death Benefit Plan relevant to this question are set forth in the margin.[4]

ent case, the Annuity Plan was effective from 1932, the Death Benefit Plan became effective January 1, 1941, and McCobb retired in 1944. Apart from the fact that the company established no reserve at all, it is most unlikely that it would have reached a terminal-stage (paid-up) in less than four years. There is not the slightest indication that his retirement allowance and the death benefit were created as a combination annuity contract and life insurance policy on McCobb's life.

4. "*Part II.* DEFINITIONS:

"(f) The term 'widow' shall mean the decedent's wife who was lawfully married to him either by civil or religious ceremony both at the time of his retirement and at his death, and who was either living with him or in receipt of support from him at the time of his death to the extent of at least twenty per centum (20%) of his retirement allowance then in effect.

"(g) The term 'minor children' shall include a child born of a lawful marriage contracted by the decedent either by civil or religious ceremony, stepchild and child legally adopted by the decedent, who was under twenty-one (21) years of age and either living with him or in receipt of support from him at the time of his death to the extent of at least twenty per centum (20%) of his retirement allowance then in effect.

"(h) The term 'parents' shall include a natural parent, step-parent or foster parent of the decedent who was either living with him or in receipt of support from him at the time of his death to the extent of at least twenty per centum (20%) of his retirement allowance then in effect.

"*Part III.* AMOUNT OF BENEFIT—BENEFICIARY:

"(a) In the event of the death of an annuitant, a death benefit in an amount equal to the excess, if any, of the decedent's annuity income over his government benefit shall be payable to the person or persons in the first of the following classes of preference beneficiaries of which a member or members shall survive the annuitant:

"The annuitant's: 1. Widow
2. Minor children in equal shares
3. Parents in equal shares,

excluding, however, any person who shall have been previously excluded at the request of the annuitant and with the written approval of the former employer.

"(b) If no person qualifies under Class 1, 2 or 3 of subdivision (a) above and there is a surviving relative or relatives by blood or marriage toward whose support the decedent regularly contributed a total of not less than $300 during the year preceding death, a special benefit shall be payable in an amount equal to the total of such year's contributions but in no case exceeding the death benefit provided under subdivision (a). Such special benefit shall be divided among such dependents in the proportion which the decedent's contributions to each such dependent bears to the total of his contributions to all such dependents.

"(c) If no death benefit is payable under either (a) or (b) above, and the deceased annuitant was not at the time of his death a subscriber to group insurance under the program of the former employer, such employer may, in its discretion, authorize the payment of reasonable burial expenses in an amount not exceeding $150.

"*Part IV.* ESTIMATE OF GOVERNMENT BENEFIT:

"The former employer may, in its discretion, estimate the amount of the government benefit. In making such estimate it shall be assumed that the conditions which determined the beneficiary's eligibility under the law at the time of the annuitant's death will pertain throughout the period covered by the estimate and that prompt application for the government benefit is made. Any such estimate shall be conclusive and binding on all beneficiaries under this Plan for the purpose of any settlement hereunder.

"If the foregoing method of estimating the amount of the government benefit is not adopted, the qualifying beneficiary or beneficiaries concerned shall be required to furnish proof, satisfactory to the former employer, of the amount and apportionment of the government benefit. Under these circumstances no benefit payment to such a beneficiary shall be authorized until such proof is furnished."

McCobb had no power akin to a right to cancel a policy, nor any power comparable to the right to obtain a cash surrender value. He had no power to designate the beneficiary. At most, he could elect to veto a person classified in the Death Benefit Plan as a beneficiary when he retired, if his employer approved in writing. See Part III(a) of the Death Benefit Plan (footnote 4 supra). Under no circumstances would any payment ever be made to his estate. Cf. Chase National Bank of City of New York v. United States, 2 Cir., 1940, 116 F.2d 625. Neither the amount of his retirement allowance nor the size of his estate could be affected. Under the contingency that no qualified dependent beneficiary was alive at his death, the company *in its discretion,* might "authorize the payment of reasonable burial expenses in an amount not exceeding $150." In fact, it was possible that no one would qualify to receive any payment.

The absence of a formal contract from a life insurance company should not prevent consideration of payments, which functionally are "life insurance proceeds", as insurance for tax purposes. See Commissioner of Internal Revenue v. Treganowan (supra). Cf. Kernochan v. United States, 29 F.Supp. 860, 89 Ct. Cl. 507 (1939), cert. den. 309 U.S. 675, 60 S.Ct. 711, 84 L.Ed. 1019 (1940). In any event, if the promise of the company was not enforceable, so as to prevent consideration of the payments as "insurance", they would be equally ineligible as payments receivable under "any form of contract or agreement."

McCobb did not possess the requisite incidents of ownership of the right to receive the dependency benefits to permit § 2042 to apply.

## OTHER SECTIONS

As previously pointed out, the lack of any inter vivos feature excluded the payments from taxation under § 2039, and the absence of incidents of ownership in McCobb prevents their taxation under § 2042. The government contends, nevertheless, that they are taxable under other provisions of the 1954 Code. For death benefits to be taxable under §§ 2035, 2036, 2037 and 2038, there must be property which can be transferred. Under the terms of a plan substantially the same as the one in this case, Dimock v. Corwin, D.C.E.D.N.Y., 1937, 19 F. Supp. 56,[5] aff'd. on other grounds 2 Cir., 1938, 99 F.2d 799, aff'd. 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763 (1939), held that the deceased employee had no such property. Molter v. United States, D.C.E.D. N.Y., 1956, 146 F.Supp. 497, followed Dimock in spite of the recommendation in G.C.M. 27242, 1952–51 Cum.Bull. 160 that it should not be followed.[6] See also Hanner v. Glenn, D.C.W.D.Ky., 1953, 111 F.Supp. 52, aff'd. 6 Cir., 212 F.2d 483. There must also be an actual transfer, see e. g. Commissioner of Internal Revenue v. Twogood's Estate, 2 Cir., 1952, 194 F.2d 627, and the decedent must have been the transferor. § 2037 I.R.C.1954; Estate of Albert L. Salt, 17 T.C. 92 (1951). The payments to Mrs. McCobb would not have been taxable in the decedent's estate under the corresponding sections of the 1939 Code re-enacted without change in the 1954 Code.

Sections 2033 and 2041 which reach death benefits in which the deceased possessed a property interest at death or

---

5. Dimock v. Corwin (supra) considered the statutory predecessors of §§ 2033, 2035 and 2038 I.R.C. 1954.

6. G.C.M. 27242:
   "Accordingly, it is the opinion of this office that where an employee has the right to designate the beneficiary of a death benefit under a profit-sharing and retirement plan, the employee, at the time of his death, is in possession of such rights as constitute property within the meaning of section 811(a) of the Internal Revenue Code [of 1939], provided that prior to the employee's death the employer has not withdrawn the right of the employee to designate a beneficiary, and has not eliminated all death benefits. Thus, the amount payable under the plan to the designated beneficiary is includible in the deceased employee's gross estate under section 811(a) (c), (d), and (f) of the Code [of 1939]."

over which he retained a general power of appointment during life are likewise inapplicable. Congress abandoned the premium payment test in 1954 because "no other property is subject to estate tax where the decedent initially purchased it and then long before his death gave away all rights to the property." House & Senate Reports (1337, 1622) U.S.Code, Cong. & Adm.News, 83rd Cong. 2nd Sess.1954, Vol. 3, pp. 4118 and 4757. To effect this, § 2042 amended § 811(g) I.R.C.1939 under which insurance proceeds previously had been included in the gross estate if the decedent retained control over the policy, or if he paid the premiums, directly or indirectly. By virtue of § 2042, therefore, the taxation of proceeds receivable by a beneficiary under a policy on the decedent's life otherwise corresponds with pre-existing law with one exception. Section 2042 refined that law by establishing a measurable limitation of the term "incident of an ownership" by permitting it to be satisfied by the existence of a reversionary interest only of its value exceeds 5% of the value of the policy immediately before the death of the decedent. The same limitation was introduced into § 2037(a) (2). Since what Mrs. McCobb received was not "an annuity or other payment" under § 2039, to inquire into whether what she received had been offered by the company "as an inducement to the employment of her deceased husband or a continuance thereof, or whether the contributions were made by the company in lieu of additional compensation or other rights",[7] is of no significance. Such elements of consideration, if they could be found to exist here, would be relevant under § 2042 only to whether such consideration constituted, in effect, premiums paid by the decedent. Premium payments by the deceased no longer has any bearing on whether incidents of ownership were retained by the insured.

Commentators have recognized that payments of employee death benefits to dependent beneficiaries by employers may escape estate taxation.[8] That is what happens in this case.

There is ample indication that Congress was fully aware of the increasing number of employer-financed death benefits for employees and of the then existing statutes and case law relating to such payments when it enacted § 2039 to include it in the 1954 Code. Whether it should have then correlated the various provisions of the Code so as to subject all employee death benefits to estate taxation under a contribution test as in § 2039(c) or under a control or incident of ownership test under the other sections of the Code in order to prevent this case from falling somewhere between the two is not for the court to decide; nor is it within the province of the court to do so. See Hanover Bank v. Commissioner, 82 S.Ct. 1080, 8 L.Ed.2d 187, 197 (June 1962), fn. 23, quoting from Fabreeka Products Co. v. Commissioner of Internal Revenue, 1 Cir., 1961, 294 F. 2d 876, 879: "Granting the government's proposition that these taxpayers have found a hole in the dike, we believe it one that calls for the application of the Congressional thumb, not the court's."

The defendant's motion for summary judgment is denied.

The plaintiff's motion for summary judgment is granted.

The parties are directed to submit a proposed form of judgment in accordance with this opinion within thirty (30) days.

So ordered.

---

7. See House & Senate Reports—Detailed Discussion relating to § 2039, U.S.Code, Cong. & Adm.News, 83rd Cong.2d Sess. 1954, Vol. 3, pp. 4458 and 5115 respectively, where the language is used to explain what employer contributions shall be taken into account under (b) to value the annuity.

8. In an extensive study of estate taxation of death benefits entitled "Employee Death Benefits", 66 Y.L.J. 1217 (1957) this is noted on p. 1233, fn. 70.