**Harold R. ALL, District Director of Internal Revenue, District of Connecticut, Appellant,**

v.

**Frances M. McCOBB, Executrix of the Estate of Thomas C. McCobb, Appellee.**

No. 367, Docket 27986.

United States Court of Appeals
Second Circuit.

Argued June 13, 1963.

Decided Aug. 21, 1963.

634

Michael I. Smith, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, attorneys, Dept. of Justice, Washington, D. C., on the brief), (Robert C. Zampano, U. S. Atty.), for appellant.

William Reeves, Bridgeport, Conn. (Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., on the brief), (David O. Jackson and James W. Venman, Bridgeport, Conn., of counsel), for appellee.

Before MOORE, HAYS and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This is an appeal by the District Director of Internal Revenue for the District of Connecticut, defendant below, from an order of the United States District Court for the District of Connecticut, Blumenfeld, J., which granted the taxpayer's motion for summary judgment and denied the defendant's motion for summary judgment. McCobb v. All, 206 F.Supp. 901 (D.Conn.1962).

The plaintiff, Frances M. McCobb, is the widow and executrix of the estate of Thomas C. McCobb, who had been employed as an executive of the Standard Oil Company of New Jersey. When he retired in 1944 he become eligible to receive and did receive a "retirement allowance" under an "Annuity Plan for the Employees of Standard Oil Company (New Jersey) and its Participating Subsidiaries Effective January 1, 1932." The Annuity Plan covered all employees who met certain past service requirements. It was funded by annual contributions of the company. Mr. McCobb also participated in the "Supplemental Annuities" portion of the plan, which enabled him to augment his retirement allowance at the joint expense of the company and himself. The decedent's contributions to the Supplemental Annuities Plan—which, like the Annuity Plan itself, was funded—were made in the form of payroll deductions.

On January 1, 1941, during the period of the decedent's employment, the company adopted a "Death Benefit Plan for Annuitants of the Standard Oil Company (New Jersey) and its Domestic Participating Subsidiaries." The Death Benefit Plan was "adopted as a program for supplementing [Social Security] benefits provided by law" to dependents of certain retired company employees who were also annuitants under the Annuity Plan, as the decedent became upon his retirement in 1944. The Plan was unfunded and its cost was borne wholly by the company. It provided for twelve equal payments to certain surviving dependents of deceased annuitants of benefits equal to twelve times the monthly retirement allowance paid to the annuitant, less payments provided by law by the Government. The beneficiaries who were to receive such payments upon the death of a covered annuitant were designated in the Plan in a stated order of preference. Although the annuitant did not have the right to name a beneficiary to receive the

payments upon his death, he did have the right, with the written approval of the company, to exclude any person from the stated classes of eligible beneficiaries.

Upon the death of Mr. McCobb on October 22, 1954, his widow became entitled to receive payments under the Death Benefit Plan. The Commissioner of Internal Revenue subsequently determined that these payments should be included in the gross estate of the decedent. Accordingly, the sum of $33,825.54 was added to the estate and the resulting estate tax deficiency was determined. After payment of the deficiency and denial of her claim for a refund, the executrix of the estate instituted the present action.

The district court held, upon cross-motions for summary judgment, that the Commissioner acted improperly in requiring that the payments made to the widow under the Death Benefit Plan be included in her husband's gross estate for purposes of federal estate taxation. Judgment was entered against the District Director and in favor of the taxpayer in the amount of $5,356.39. It is from that judgment that the District Director has taken this appeal.

The primary reliance of the Government is upon § 2039 of the Internal Revenue Code of 1954, 26 U.S.C. § 2039, a section which came into the Code for the first time in 1954 and has no counterpart in the prior Code. Section 2039 provides:

"(a) General.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

"(b) Amount includible.—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment."

The district court held that § 2039 was not applicable because the payments to the decedent's widow were "functionally 'insurance'," 206 F.Supp. at 903, and therefore fell within the parenthetical exclusion of the section. Because we have concluded that the payments here in question are clearly taxable to the decedent's estate under § 2039, as the Commissioner has from the first contended, the decision of the district court must be reversed.

Putting to the side for the moment the question of whether the payments to the widow may properly be regarded as insurance, the operative facts in this case otherwise satisfy each of the conditions of the statute. The Treasury Regulations interpreting and implementing § 2039, which were approved in Estate of Bahen v. United States, 305 F.2d 827 (Ct.Cl., 1962), provide that, "The term 'annuity or other payment' as used with respect to both the decedent and the beneficiary has reference to one or more payments extending over any period of time. The payments may be equal or unequal, conditional or unconditional, periodic or sporadic." Treas.Reg. § 20.2039–1(b)(1)(ii). The twelve equal payments received by the widow during each of the twelve months immediately following the

decedent's death were thus an "annuity or other payment" within the meaning of the statute, and they were "receivable" by the widow under the terms of the Death Benefit Plan "by reason of [the widow's] surviving the decedent." That the Death Benefit Plan constituted a "form of contract or agreement" within the meaning of § 2039 also is made clear by § 20.2039–1(b) (1) (ii), which goes on to state, "The term 'contract or agreement' includes any arrangement, understanding or plan, or any combination of arrangements, understandings or plans arising by reason of the decedent's employment." The Death Benefit Plan, a formal document specifying the obligations of the company and the rights of the employees' surviving beneficiaries, falls directly within this language. Cf. Worthen v. United States, 192 F.Supp. 727 (D. Mass.1961). It is not disputed that the retirement allowance received by the decedent prior to his death had been "payable" to him under the Annuity Plan. Finally, for purposes of determining the applicability of § 2039, the Annuity Plan and the Death Benefit Plan are to be considered as having been integrated into a single plan. "All rights and benefits accruing to an employee and to others by reason of the employment * * * are considered together in determining whether or not section 2039(a) and (b) applies. The scope of section 2039(a) and (b) cannot be limited by indirection." Treas.Reg. § 20.2039–1(b) (2), Example (6).

The statute thus clearly calls for inclusion in the decedent's gross estate of the death benefits paid to the widow, unless these benefits can be found to have been insurance, as the district court found. It based this finding upon the ground that "the payments in this case were designed to provide partial protection for one year to her as a dependent beneficiary against loss of retirement allowances to her husband through his untimely death." 206 F.Supp. at 903. We hold that this finding is without support and cannot be sustained. The fact that a payment is designed to afford a widow partial protection against the difficulties presented by her husband's death does not, *ipso facto,* convert that payment into insurance. The function of providing partial protection to widows is characteristic of a great many survivorship annuities and payments which nevertheless are not insurance for purposes of federal estate taxation and which are includable within a decedent's gross estate and taxable as such under § 2039. See Comment, 66 Yale L.J. 1217, 1238–48 (1957). It is thus necessary to carry the analysis beyond the point of merely concluding that the payments to the widow provided her with partial protection after the death of her husband, because that conclusion cannot logically be dispositive.

The term "insurance" was given definition by the Supreme Court, for purposes of federal estate taxation, in Helvering v. LeGierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996 (1941). In order to constitute insurance within the contemplation of the statute, the Court said,

"the amounts must be received as the result of a transaction which involved an actual 'insurance risk' at the time the transaction was executed. Historically and commonly insurance involves risk-shifting and risk-distributing. * * * That these elements of risk-shifting and risk-distributing are essential to a life insurance contract is agreed by courts and commentators. [citing authorities]." 312 U.S. at 539, 61 S.Ct. at 649, 85 L.Ed. 996.

"Implicit in this provision is acknowledgment of the fact that usually insurance payable to specific beneficiaries is designed to shift to a group of individuals the risk of premature death of the one upon whom the beneficiaries are dependent for support." Id. 312 U.S. at 540, 61 S.Ct. at 649–650, 85 L.Ed. 996.

The Court in LeGierse held that the two contracts in question, one of which provided annuity payments to the insured and the other a lump sum payment to a

named beneficiary upon the death of the insured, had to be construed together and that, so construed, they did not contain any element of insurance risk. The payment to the beneficiary could not be regarded as insurance because "annuity and insurance are opposites; in this combination the one neutralizes the risk customarily inherent in the other. From the company's viewpoint, insurance looks to longevity, annuity to transiency." 312 U.S. at 541, 61 S.Ct. at 650, 85 L.Ed. 996.

In Commissioner v. Treganowan, 183 F.2d 288 (2 Cir.), cert. denied, 340 U.S. 853, 71 S.Ct. 82, 95 L.Ed. 625 (1950), this court held that amounts received under a plan of the New York Stock Exchange providing for the payment by surviving members of the Exchange of a certain sum to the families of deceased members constituted insurance in light of the test set down in LeGierse. Under the terms of the plan, the risk of loss from premature death was effectively shifted from individual members of the Exchange to the group of other members, among whom the risk was distributed. See Note, 59 Yale L.J. 780 (1950). The court noted:

> "If the individual member dies prematurely, the amount paid to his kin will exceed the amount of assessments which he himself has paid in, the difference representing the loss caused by his premature death which the group has had to bear. Had he not been a member of the plan, he would have saved the amount of assessments against him before his death, but his beneficiaries would be $20,000 poorer. Thus they would have borne this loss which, through the Exchange plan, he has shifted to the group." 183 F.2d at 291.

Judged by the standards of LeGierse and Treganowan, the Death Benefit Plan bears no resemblance to a life insurance program. The Plan was unfunded and the company did not make periodic contributions to it in the employee's name. "Premium payments [were] not required, nor [was] there a shifting and spreading of the risk of death in any meaningful sense." Essenfeld v. Commissioner, 311 F.2d 208, 209 (2 Cir., 1962). The decedent in no way shifted to the company the risk that his death would come prematurely and before the company, as insurer, had received premiums by or on his account in a sum equal to the amount required to be paid to the beneficiary. The company in no way gambled with the decedent that he would live a long life and that it would recover by periodic assessments before his death the amount to be paid to the beneficiary. It made no difference to the company, so far as any fund was concerned, whether the decedent died prematurely or not. Cf. Old Colony Trust Co. v. Commissioner, 102 F.2d 380 (1 Cir., 1939). Nor did the company in any way undertake to distribute among a larger group of employees, on the basis of actuarial data from which the appropriate size of a terminal reserve could be computed, the risk of the premature death of a single employee. The company did nothing more than promise to pay a sum certain to a named beneficiary upon the death of a retired employee. If payments resulting from such a promise were under the present facts to be regarded as insurance, the effectiveness and significance of § 2039 would be greatly diminished, if not vitiated.

Even if the Death Benefit Plan were to be considered together with the Annuity Plan as a "coordinated system of payments to employees in consideration for their services," Essenfeld v. Commissioner, 311 F.2d at 209, the result would remain the same. The Treasury Regulations provide that "A combination annuity contract and life insurance policy on the decedent's life (e. g., a 'retirement income' policy with death benefits) which matured during the decedent's lifetime so that there was no longer an insurance element under the contract at the time of the decedent's death is subject to the provisions of § 2039(a) and (b)." Treas. Reg. § 20.2039-1(d).

This disposition makes it unnecessary to consider the holding of the district

court that the payments to the widow were also not taxable, as the Government had contended in the alternative, under several other sections of the Code.

Reversed.