ESTATE OF HENRY C. BEAL, DECEASED, DICK H. BEAL, ADMINISTRATOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2765–64. Filed December 8, 1966.

*Felix G. Forlenza*, for the petitioner.
*Julius M. Jacobs*, for the respondent.

### OPINION

MULRONEY, *Judge:* Respondent determined a deficiency in estate tax in the amount of $8,544.72. The issues are (1) whether a death benefit of $50,750 payable to decedent's widow by his employer is includable in decedent's gross estate under section 2039, I.R.C. 1954, and (2) the value of such death benefit includable in decedent's gross estate.

All of the facts were stipulated and they are so found.

Henry C. Beal died intestate on December 31, 1959, a resident of South Orange, N.J. Surviving him were his wife, Nola B. Beal, and his son, Dick H. Beal. On January 8, 1960, letters of administration were issued out of the Surrogate's Court, Essex County, N.J., to Dick H. Beal as administrator of the decedent's estate. On February 27, 1961, the petitioner filed a Federal estate tax return with the district director of internal revenue, Newark, N.J.

The decedent, who was born on June 7, 1891, became an employee of Western Electric Co., Inc. (hereinafter called the company), on June 24, 1914, and continued as its employee until his retirement on

July 1, 1956. Thereafter he received a pension until his death under the provisions of the company's plan for employees' pensions, disability benefits, and death benefits then in existence.

The company had adopted a "Plan for Employees' Pensions, Disability Benefits and Insurance," effective January 1, 1913. This plan, which did not provide for death benefits, continued in effect until December 31, 1929. As of January 1, 1930, the company made amendments to the plan which was now called the Plan for Employees' Pensions, Disability Benefits and Death Benefits and which continued in effect until December 31, 1945. This plan, as amended, eliminated the insurance provisions and provided death benefits for specified beneficiaries upon the death of employees and pensioners of the company. In the case of pensioners, however, the amount of any death benefit, if any, was left entirely within the discretion of the benefit committee, and a death benefit payment was made to a beneficiary only if there was need for financial assistance.

As of January 1, 1946, the company completely changed the death benefit provisions for the beneficiaries of pensioners. The death benefit payments became mandatory to certain beneficiaries of deceased pensioners, and the amount of the payments was fixed by a specific formula. Among the beneficiaries who could qualify under the plan was the wife of a pensioner who was living with him at the time of his death. Under the formula contained in the plan, the maximum death benefit payable to the surviving wife of a pensioner was a year's wages at the employee's wage rate in effect at the date of his retirement. If the pensioner died within 1 year of his retirement, the maximum death benefit would be payable to the qualified beneficiary. If the pensioner died after a full year of retirement, the death benefit would be reduced by 10 percent for each full year of retirement, but not below the equivalent of 1 year's pension allowance. Under the plan, a pensioner was allowed to file a written direction that the death benefit payments which became payable to a beneficiary within the qualified group should be made in equal monthly installments over a specified period not exceeding 120 months. The plan provided that death benefits would cease upon the death of the beneficiary. However, the plan also provided that in the event the beneficiary died before receiving all installment payments, the unpaid portion of the mandatory death benefit would be paid either for "death and burial" expenses of the deceased beneficiary or to an alternate beneficiary under the plan. When the benefit committee received notice that a retired employee had died, it would ascertain at its meeting whether or not there was in existence a qualified beneficiary to receive the death benefit; determine the amount of the mandatory death benefit payable under the plan; and direct the payment of said amount to the beneficiary over the period of time elected by the pensioner.

The plan, amended as of January 1, 1946, remained substantially unchanged, insofar as death benefits were concerned, up to the date of decedent's death on December 31, 1959. The decedent made no monetary contribution towards the payment of the death benefit.

Prior to his retirement the decedent, pursuant to the provisions of the plan, elected to have the death benefit payable to his beneficiary in monthly installments over a period of 120 months, and at no time up to the date of his death did he exercise his right under the plan to modify or revoke said election. At the time of his retirement on July 1, 1956, the decedent's annual wage rate was $72,500. Since decedent had been retired for more than 3 full years when he died on December 31, 1959, the death benefit payable to his beneficiary under the provisions of the plan was $50,750 ($72,500 minus $21,750).

Under the provisions of the plan, Nola B. Beal, the surviving wife of the decedent, was a qualified beneficiary of the death benefit, and the employees' benefit committee directed the payment to her of said death benefit, in the amount of $50,750, in equal monthly installments over a period of 120 months. Nola B. Beal, who was born July 17, 1887, was still receiving the monthly payments at the time of the trial.[1]

Subsequent to the date of decedent's death, the company amended the death benefit portion of the plan to fund the death benefits of persons dying after said amendment by providing for a trust fund which qualified for exemption under the provisions of the 1954 Internal Revenue Code.

Petitioner filed an estate tax return but did not include any amount in decedent's gross estate for the death benefit payments. Respondent determined in his statutory notice of deficiency that the value of the death benefit in the amount of $50,750 was includable in the decedent's gross estate.

Respondent relies solely upon section 2039, I.R.C. 1954.[2] The purpose of this section, which is new in the 1954 Code, was to clarify prior

---

[1] We are informed in petitioner's brief that Nola B. Beal died on July 9, 1966, after the trial of this case. It is also stated in petitioner's brief that the total amount of death benefits paid to Nola to the date of her death was $33,410.68 (through June 30, 1966), with an unpaid accrual for the period July 1 through July 9, 1966, in the amount of $122.78. Respondent makes no objection to the accuracy of these figures.

[2] All section references are to the 1954 Internal Revenue Code, as amended. Sec. 2039(a) provides as follows:

SEC. 2039. ANNUITIES.

(a) GENERAL.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

[Subsec. (b) defines the amount includable in the gross estate of decedent, and subsec. (c) provides for the exemption of annuities under certain trusts and plans.]

law as to whether a joint and survivor annuity purchased by a decedent's employer, or an annuity to which both the decedent and his employer made contributions, is includable in the decedent's gross estate. H. Rept. No. 1337, 83d Cong., 2d Sess., p. 90. However, the broad language of the section goes beyond the precise situation which served as the initial impetus for congressional action in this area.

In order to determine whether the death benefits here involved come under section 2039, we cannot treat the death benefit portion of the employer's "Plan for Employees' Pensions, Disability Benefits and Death Benefits" in isolation, but must consider it together with the portion of the plan providing for pension payments to retired employees.[3] *All* v. *McCobb*, 321 F. 2d 633 (C.A. 2, 1963); *Bahen's Est.* v. *United States*, 305 F. 2d 827 (Ct. Cl. 1962); and sec. 20.2039–1(b)(2), ex. (6), Estate Tax Regs. In fact, the death benefit provisions were closely allied to the pension provisions in that payments to a retiree could affect the amount of the death benefits. Decedent had been receiving a pension from the date of his retirement on July 1, 1956, until he died on December 31, 1959, at which time the benefit committee ascertained that decedent's widow was a qualified beneficiary for death benefit payments and, accordingly, directed that payment of such death benefit in the amount of $50,750 be made to her over a period of 120 months (under decedent's prior election). It appears from the statement of Leo E. Flynn,[4] the associate secretary of the benefit committee who, for the past 20 years, was closely connected with the operation of the Plan for Employees' Pensions, Disability Benefits and Death Benefits, that the death benefit payments were "mandatory" to qualified beneficiaries under the plan. Under these facts, we believe that there existed a "form of contract or agreement" under which (1) an "annuity or other payment" was payable to the decedent, and (2) the beneficiary was entitled to receive an "annuity or other payment" by reason of surviving the decedent. Section 2039 applies where these two elements exist, and we can perceive no reason to limit the section only to those payments to a beneficiary which are a continuation of the payments to the decedent or to those payments to a beneficiary which are a substitution for amounts otherwise payable to the decedent.

It is also clear that the contract or agreement under which the death benefit was payable to the beneficiary was entered into well after March 3, 1931,[5] which is the statutory cutoff date for contracts or agreements encompassed by section 2039. It was not until January 1,

[3] The printed copy of the plan, including an amendment effective Apr. 1, 1961, contains 30 pages which outline its provisions in great detail. Sec. 4 of the plan covers employees' pensions, while sec. 7 deals with death benefits.

[4] It is stipulated that the written statement "may be accepted to the same extent as it would have been had he appeared in person to so testify."

[5] Mar. 3, 1931, is the date of the joint resolution under which transfers with a retained life estate were made subject to the estate tax. [See sec. 2036 (a) and (b).

1946, that the employer introduced a mandatory death benefit for qualified beneficiaries, and it was *this* contract or agreement that was in effect in 1956 when decedent retired and when he died and his widow was selected by the benefit committee as the qualified beneficiary. From 1913 through 1929 the employer's plan only provided for employees' pensions, disability benefits, and insurance, and as of January 1, 1930, the original plan was revised, eliminating the insurance provisions and providing for death benefits. However, these early death benefits were not payable to a beneficiary under any specific formula but were entirely within the discretion of the benefit committee both as to amount and as to the beneficiary. Flynn stated that "During this period [from 1930 through 1945], a death benefit payment was made to the beneficiary only if there was need for financial assistance." Such voluntary or gratuitous payments by the employer would not constitute a "contract or agreement" within the meaning of section 2039 (a). *Estate of William E. Barr*, 40 T.C. 227 (1963). The "contract or agreement" under which the mandatory death benefits were paid was entered into as of January 1, 1946, which means the contract or agreement is brought within the provisions of section 2039(a) which operates on contracts or agreements "entered into after March 3, 1931."

Petitioner argues that section 2039 is not applicable here because the decedent had no property interest in the death benefit which was payable to the beneficiary. But the cases petitioner cites in support of this contention involve, for the most part, the estate tax provisions under the 1939 Code which reached the decedent's interest in property at the time of his death. See, for example, *Estate of Albert L. Salt*, 17 T.C. 92, and *Dimock* v. *Corwin*, 19 F. Supp. 56, affirmed on other issues 99 F. 2d 799 (C.A. 2, 1938), affirmed 306 U.S. 363. At most, these cited cases merely illustrate the very uncertainty in this area which Congress sought to overcome by enacting section 2039 in the 1954 Code. See H. Rept. No. 1337, 83d Cong., 2d Sess., p. 90. We agree with the observation made by the court in *Bahen's Est.* v. *United States, supra*, concerning the scope of section 2039 :

Section 2039 was a development of the earlier provisions of the estate tax which spoke of the decedent's "property" and of "transfers" by the decedent in contemplation of or taking effect at death. See Section 811 of the Internal Revenue Code of 1939. The new section does not use that phraseology but frames its operative requirements more directly in terms of particular types of transactions or arrangements involving the decedent. This change is significant. We must pay heed to the precise new form in which Congress cast its net and not become entangled in the older meshes.

*Estate of Firmin D. Fusz*, 46 T.C. 214, cited by petitioner, is not applicable here. Our holding in that case is merely that section 2039 will not apply, where, under the contract or agreement or otherwise, the decedent was not receiving or entitled to receive any post-employ-

ment benefits at the date of his death. Here decedent was actually a pensioned retiree at the time of his death.

We find, and so hold, that the value of the death benefit payable to decedent's widow is includable in decedent's gross estate under the provisions of section 2039.

Respondent contends that the "value" of the death benefit includable in decedent's estate under section 2039 (a) and (b) was $50,750, or the entire amount of the 120 monthly installments payable to the widow under the decedent's election. Respondent argues on brief that (1) whether the entire $50,750, or the commuted value of the 120 monthly installment payments, or any other computed value, is to be included in the gross estate depends upon the control decedent had at the date of his death over the method of payment of the death benefit; and (2) since decedent had complete control over the method of payment (i.e., in equal monthly installments but not to exceed 120 months), the entire $50,750 is includable in his gross estate. Respondent cites no authority for this principle of valuation which he asks us to adopt in this case.

We do not see why respondent attaches such importance to the extent of control by the decedent over the death benefit at the date of his death. There is nothing in section 2039 to indicate that such control is the pivotal consideration for valuation purposes. The emphasis in section 2039 is on the value of the annuity or other payment receivable by the beneficiary. If the surviving widow was entitled under the contract or agreement to receive an annuity or other payment for the duration of her life, the present or commuted value of such payments at the time of decedent's death would ordinarily be the proper measure of their value for estate tax purposes. See section 2031 and respondent's regulations under that section. We believe that this same valuation principle also applies where, as here, the payments receivable by the beneficiary or beneficiaries are for a definite term, i.e., monthly payments over a period of 120 months, and we so hold.

*Decision will be entered under Rule 50.*