James C. SILBERMAN and Alan L. Silberman, Executors of the Estate of Lewis L. Silberman, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 68–1038.

United States District Court, W. D. Pennsylvania.

Nov. 3, 1971.

---

Seymour J. Schafer and Harvey I. Goldstein, Pittsburgh, Pa., for plaintiffs.

Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson, and Thomas R. Wechter, Dept. of Justice, Washington, D. C., Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

This matter came on for non-jury trial on a complaint filed by the plaintiffs in which they sought the return of $13,620.47 plus interest which is alleged to be an overpayment of estate taxes by the Estate of Lewis L. Silberman.

The parties have stipulated and I find that the plaintiffs in this action are James C. Silberman and Alan L. Silberman, Executors of the Estate of Lewis L. Silberman, deceased; that the defendant is the United States of America; that on August 24, 1964, the plaintiffs filed a Federal Estate Tax Return, Form 706, showing a gross estate of $425,018.99, a taxable estate of $108,733.30 and an estate tax due and owing of $22,620.26, which amount was paid with the return; that on August 14, 1967, the plaintiffs filed with the District Director of Internal Revenue, Pittsburgh, Pennsylvania, a claim for refund, Form 843, requesting a refund of $13,620.47, plus interest, on the grounds that the amount included in the decedent's gross estate under Schedule I, Annuities, of the Federal Estate Tax Return was improperly included in the gross estate; that the plaintiffs' claim for refund was rejected by certified mail on May 9, 1968; that pursuant to 28 U.S.C. § 1346(a) (1) the complaint in this action was filed on November 26, 1968; that the decedent was employed by the Henry Wilkens Company, prior to 1945; that the Wilkens Company, successor to Henry Wilkens Company was incorporated on June 28, 1945; that from July 14, 1945 until the date of his death, May 25, 1963, the decedent was President, Treasurer and General Manager of the Wilkens Company; that on July 2, 1955, the decedent entered into an agreement with the Wilkens Compa-

ny (the 1955 Agreement); that the Board of Directors of the Wilkens Company authorized the agreement at the annual meeting of the Board of Directors of the Company held on July 1, 1955; that on June 5, 1959 the decedent entered into an amended employment agreement with the Wilkens Company (the 1959 Agreement) which was ratified by the Board of Directors at a special meeting on June 5, 1959; that the decedent owned 98 percent of the outstanding shares of common stock of the Wilkens Company since 1945 and his wife, Dorothy P. Silberman owned the remaining two percent; that from the date of the 1955 Agreement and continuously until the date of his death in 1963, the decedent fulfilled his obligations under the agreement on a full-time basis; that Lewis L. Silberman died testate on May 25, 1963 and that he was survived by his wife, Dorothy P. Silberman, and two sons, James C. Silberman and Alan L. Silberman, the executors here, as plaintiffs.

Prior to his death Mr. Silberman entered into an employment agreement with the Wilkens Company. It is the provisions of that agreement, as amended, which now become the focus of this dispute.

The 1955 Agreement provides in part:

"1. Subject to the terms of this agreement, the Company hereby engages the services of Mr. Silberman for and during the term of his life and Mr. Silberman hereby accepts such employment.

2. For the period commencing with the execution of this agreement until Mr. Silberman shall attain the age of seventy, or such time as Mr. Silberman shall become incapacitated by a permanent illness or other disability, whichever is sooner, Mr. Silberman is to serve the Company in an executive and managerial capacity and is to render such services and fill such offices as the Company, through its Board of Directors, may from time to time, determine. Upon Mr. Silberman's becoming seventy years of age and from time to time thereafter, the term of employment under this Paragraph 2 may be continued for such period as requested by Mr. Silberman and agreed to by the Board of Directors of the Company. During the period of employment provided for in this Paragraph 2, Mr. Silberman agrees to devote his entire time and attention to the business of the Company.

3. For his services under Paragraph 2 of this agreement, the Company agrees to pay Mr. Silberman, and Mr. Silberman agrees to accept, compensation in accordance with the present salary and bonus arrangements.

4. From the termination of full-time employment, as provided in Paragraph 2, until Mr. Silberman's death, the Company agrees to employ Mr. Silberman, and Mr. Silberman agrees to act, in an advisory capacity and when reasonably requested by the Company, Mr. Silberman agrees to make himself available to it for general advice and consultation.

5. For his services under Paragraph 4 of this agreement the Company agrees to pay Mr. Silberman, and Mr. Silberman agrees to accept from the Company, compensation at the rate of fifty percent of the salary and bonus receivable by Mr. Silberman under Paragraph 3 on termination of full-time employment under Paragraph 2.

6. The Compensation hereinbefore provided in this agreement shall not affect Mr. Silberman's right to participate in or benefit from any subsequent stock purchase, profit-sharing or pension plan of the Company nor shall it affect his right to share from time to time in any distribution of bonuses or additional compensation to officers or employees or to receive compensation from any subsidiary of the Company.

7. If Mr. Silberman shall die while employed under the terms of this agreement, the Company shall pay to

his wife, Dorothy P. Silberman, during the term of her natural life or for a period of five years, whichever is the lesser, an amount equal to the compensation paid to Mr. Silberman specified in Paragraph 5 of this agreement.

8. Mr. Silberman agrees that, without first obtaining the written consent of the Company to do so, he will not accept employment with any company, partnership or individual engaged in a business competitive to that of the Company in the territory in the United States east of the Mississippi River, nor will he engage or participate by way of material ownership, direct or through stockholdings, in any business competitive to that of the Company in such territory east of the Mississippi River.

9. This agreement is entered into pursuant to a resolution of the Board of Directors of the Company adopted at a meeting held on July 1st, 1955, at which all directors were present."

The 1959 Agreement amended paragraph 7 of the 1955 Agreement and provided:

"If Mr. Silberman shall die while employed under the terms of this agreement the Company shall pay his wife, Dorothy P. Silberman, during the term of her natural life, the sum of $10,000 per annum in equal monthly installments."

Following the death of Mr. Silberman, the commuted value of Mrs. Silberman's life interest was found to be $99,036, and this amount was included in the value of decedent's gross estate. The plaintiffs now argue that this amount was improperly included in evaluating decedent's estate, and that a tax refund of $13,620.47 with accumulated interest should be made.

It is provided in § 2039(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 2039(a) that:

"The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by rea-son of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 * * * if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death."

In enacting § 2039, "Congress intended to include in the gross estate of a decedent for estate tax purposes the value of interests which under traditional common law concepts were never part of the 'estate'. These interests are considered to pass to others at decedent's death because they were interests 'belonging to, accumulated by, or created by or for' the decedent." Gray v. United States, 410 F.2d 1094, 1097, C.A. 3, 1969.

In order to guide the public in the application of this section of the Internal Revenue Code, the Treasury Department has adopted Regulations, which "unless they violate the statute they seek to implement * * * must be accepted in the areas they occupy." Bahen's Estate v. United States, 305 F.2d 827, 829, 158 Ct.Cl. 141 (1962). See also, Petroleum Heat and Power Co. v. United States, 405 F.2d 1300, 186 Ct.Cl. 486 (1969). In the instant case, the applicable regulations are found in 26 C.F.R. § 20.2039.1, which provide that:

"The term 'annuity or other payment' as used with respect to both the decedent and the beneficiary has reference to one or more payments extending over any period of time. The payments may be equal or unequal, conditional or unconditional, periodic or sporadic. The term 'contract or agreement' includes any arrangement, understanding or plan, or any combination of arrangements, understandings or plans arising by reason of the decedent's employment. An annuity

or other payment 'was payable' to the decedent if, at the time of his death, the decedent was in fact receiving an annuity or other payment, whether or not he had an enforceable right to have payments continued. The decedent 'possessed the right to receive' an annuity or other payment if, immediately before his death, the decedent had an enforceable right to receive payments at some time in the future, whether or not, at the time of his death, he had a present right to receive payments. In connection with the preceding sentence, the decedent will be regarded as having had 'an enforceable right to receive payments at some time in the future' so long as he had complied with his obligations under the contract or agreement up to the time of his death * * * "

▇ The essential elements which must be demonstrated before annuities or other payments will be included in a decedent's gross estate under the general provisions of § 2039 are therefore:

1. The annuity or other payment must have been made pursuant to a form of contract or agreement;

2. The beneficiary must have received or been receiving an annuity or other payment by reason of surviving the decedent;

3. An annuity or other payment must have been payable to the decedent or the decedent must have possessed the right to receive the same;

4. The annuity or other payment payable to the decedent must have been payable to him at his death, or he must have possessed the right to receive the same at his death; and

5. The decedent's right to receive payments must be possessed for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

The payments being made to Mrs. Silberman are annuity payments paid pursuant to a contractual obligation incurred by the Wilkens Company as a result of Mrs. Silberman surviving her husband. Consequently, the essential issue for determination is whether or not at the time of his death, Mr. Silberman possessed the right to receive an annuity payment. Gray v. United States, *supra.*

The plaintiffs base their claim upon Kramer v. United States, 406 F.2d 1363, 186 Ct.Cl. 684 (1969). In that case an agreement provided that the decedent would be employed as a general manager throughout the course of his life at a predetermined salary, and that in the event of his disability he would continue at the same salary as a consultant. In the event of his death while serving under the agreement,[1] his widow was to receive certain benefits. The question there was whether or not the benefits payable to the widow were includable in the decedent's gross estate. It was held that the benefits were not includable.

Upon analysis, it will be seen that the similarity between the employment agreement in *Kramer* and the one presently before me, is only a limited one. In *Kramer* continuous, full-time employment was contemplated without regard to Kramer's health or age, and it would be possible for anyone looking at the employment agreement to ascertain what compensation Kramer was to receive without consulting extrinsic sources, so long as Kramer continued to live. Thus Kramer was not to receive an annuity or other similar compensation in a life-time employment, but merely a fixed compensation during such employment, that "there was lacking one of the other alternative requisites of the statute,—the possession by the decedent at his death of the right to receive an annuity payment." *Gray* footnote 14. However, in the Silberman contract two distinct categories of service were contemplated: that which was to be performed through

---

1. It seems highly unlikely that any state of events would have caused Kramer to cease being employed under the terms of the agreement, since it contemplated "employment" for the entire term of his natural life.

age 70 or prior incapacity, and that to be performed after age 70 or upon prior incapacity. For each of these two distinct classifications, different rates of compensation and types of service were contemplated, and one reading the agreement would have to consult extrinsic evidence to determine at what rate Silberman was to be paid. This differentiation in essence distinguishes the cases, in that *Kramer* made no status determination whereas Silberman provides for the assumption of a role other than that occupied during active, full-time employ. However, both cases are similar in that the survivorship benefits were to be paid to the widow, contingent only upon survival.

In *Gray, supra*, upon which the defendant relies, the factual situation involved both a retirement annuity plan and a survivorship plan. As a participant in the retirement plan, Gray had a vested right upon reaching the mandatory retirement age of 65 to receive an annuity for the remainder of his life. The survivorship plan provided that if an employee with more than 20 years of service died during the course of his active employ, his beneficiary would receive certain specified benefits. In *Gray*, the decedent died during his active employ prior to reaching the mandatory retirement age, and the question raised was whether the benefits payable under the survivorship plan would be included in his gross estate for estate tax purposes. The Court concluded that while the benefits payable under the survivorship plan standing by themselves would not be includable in the decedent's gross estate, because of their inclusion in the scheme providing for retirement benefits, the entire plan must be considered as an annuity plan taxable under § 2039.

The Silberman agreement provides in essence that so long as he lived, Silberman was entitled to receive certain benefits, i. e., during good health and until the age of 70 he was to continue receiving maximum benefits, and upon reaching the age of 70 or his earlier incapaci-

ty, he was to receive reduced benefits. Therefore, had death not occurred, but rather had Silberman become incapacitated he would have been entitled to receive an immediate annuity, regardless of his age. Accordingly, Silberman need not have "retired" in order to receive the benefits as was necessary in *Gray*, nor need he have worked a certain length of time or attained a specified age. The purpose of the plan here was to provide an income for Silberman throughout the course of his life, no matter what the condition of his physical health *and* upon his decease to provide certain benefits for his widow, conditioned only upon her surviving him. Thus, at the time of his death, he had complied with his obligations under the contract or agreement and therefore, he had an enforceable right to receive payments in the future. This right constitutes a right to receive an annuity. 26 C.F.R. § 20,2039.1.

In *Gray* no allowance was made for incapacity but only for retirement, and in the event that Gray had retired prior to his death, the survivorship plan would have been a nullity, and it was the survivorship plan which the Commissioner sought to tax. That is, *Gray* concerned two separate disjunctive plans and only one plan could take effect, whereas in Silberman, the plans were conjunctive and both the retirement and survivorship plans could be effectuated.

Thus, while the general total nature of the plan in Silberman is more closely analogous to that in *Kramer*, the means by which it sought to achieve this goal is more closely analogous to that in *Gray*.

It is not our function to speculate on what the underlying facts of the present case are, but only to draw inferences from the facts which have been presented in evidence. However, it is not beyond our right to surmise that the purpose of the agreement was to eventually establish the decedent's two sons as operators of the family business enterprise, so that the decedent might gradually retire from active participation as

the general manager. The fact that the decedent was to be available for consulting purposes merely recognizes that one who owns 98% of the common stock of a company would be rather reluctant to part with some "say-so" in the management of its affairs.

The fact that full compensation was to be paid while the decedent had not relinquished management of the business would be anticipated. But when he relinquished the management of the business either by attaining the age of 70, or his prior incapacity, it was anticipated that he be paid in effect a retirement or disability payment as the case might be. Thus, the plaintiffs' characterization of the agreement as one anticipating continuous active employ is illfounded. Rather we deal here with a situation anticipating employ through the age of 70 or prior incapacity. Subsequent to that time, Silberman was to receive such payment as was contemplated by § 2039 as a retirement benefit upon the happening of either event set out in the agreement.

We of course do not disregard the obligation that he be available for general advice and consultation, if and when so requested or required by the Company. But it is at once obvious that the obligations on the part of the retiring or incapacitated President, Treasurer and General Manager is at the very most an ephemeral obligation in consideration of the 50% payment which would be made to him for the rest of his life. And equally, with this specified obligation of advice and consultation is the unspecified obligation under all the variations which the term "incapacitated" may present. Thus, if Mr. Silberman had become completely incapacitated to the point where there could be no response to requests for advice or consultation, obviously he would still have received the payment under the agreement.

The question then is whether the anticipated termination of "full-time employment" represents a withdrawal from active service, and the assumption of the status of an annuitant. Such a status seems to be contemplated by the terms of the agreement which expressly provides that " * * * the Company is desirous of retaining the full-time services of Mr. Silberman until his *retirement* and of making his experience and advice available to the Company after his *retirement * * *"* (Emphasis added)

An annuity " * * * designates a fixed sum, granted or bequeathed, payable periodically. * * *" 3 C.J.S. Annuities § 1, pages 1373–1374. While difficult to define, it may generally be said to be a periodic fixed payment made to an individual by some third party, for life or some fixed period of time. Bodine v. Commissioner of Internal Revenue, 103 F.2d 982, C.A. 3, 1939, cert. den. 308 U.S. 576, 60 S.Ct. 92, 84 L.Ed. 483 (1939). It " * * * is a fixed amount directed to be paid absolutely and without contingency." Dwight Estate, 389 Pa. 520, 525, 134 A.2d 45, 48 (1957).

Retirement " * * * is variously defined as meaning to separate or withdraw; to withdraw from office, a public station, business or the like; to withdraw from active service. * * *" 77 C.J.S. pages 329–330. It does not of necessity mean the absolute withdrawal of an employee or official from his previous position in order to be entitled to retirement payments and this quite obviously is what the parties had in mind when they created the wording and terminology of the agreement. Thus the call for advice and consultation played no really significant part in the separation of Silberman from active service. For the parties knew quite well that as the owner of 98% of the outstanding shares of common stock and of one entitled to participate in the dividends and profits of the Company, he had such a basic interest as would require him to advise and hold himself subject to consultation, if and when his advice was sought, for the preservation of his own financial interests.

The right to receive such payments satisfies the requirement that the

decedent possessed the right to receive annuity payments at the time of his death. Gray v. United States, *supra*; Bahen's Estate v. United States, *supra*.

It must next be determined whether or not the requirements of § 2039(b) are met by the employment agreement. That section provides that the general provisions of § 2039 apply,

> " * * * to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment."

Part of the consideration for the employment agreement before me includes the retirement or disability plan and therefore the requirements of § 2039(b) are met.

The rights which the decedent possessed immediately prior to his death, were rights which were solely dependent upon him, and in no way dependent upon his employer. The employer's obligations were fixed by the terms of the contract, and nothing the employer could do would alter its obligation. Effectuation of the provisions of the agreement was solely dependent upon conditions which would befall the employee, i. e., he would reach the age of 70 or suffer some prior incapacity which would then have created immediately enforceable obligations on the employer. The Court in In re Wadewitz' Estate, 339 F.2d 980, 983, C.A. 7, 1964, relied on *Bahen, supra,* and determined that " * * * the statute, supported by the applicable Treasury regulations, includes a right to possess in the future even if such right is contingent upon the happening of an event

as long as the contingency is not within the control or discretion of another." This is precisely the situation which occurred in *Gray* and occurs here. However, it is different from the situation in *Kramer* in that in the latter case a predetermined periodic payment was to be made by the employer irrespective of any act or election of the employee, and was totally independent of any contingent events. In *Kramer* the salary was in many respects analogous to a mandatory periodic payout of interest to an individual without any contingencies being attached, and which was a continuing obligation of the employer, until Kramer's death, irrespective of Kramer's age, health, or employment status.

Since at the time of his death Mr. Silberman possessed the right to receive retirement payments, any benefits which would inure to his wife as a consequence of this employment agreement considered as a whole, are includable in Mr. Silberman's gross estate. Gray v. United States, *supra*; Bahen's Estate v. United States, *supra*.

Judge Aldisert dissenting in *Gray* believed that certain essential requisites for taxation were lacking. Specifically, he believed that it was a fiction to say that Gray had some enforceable future right to receive benefits, when at the time of his death he could not under any circumstances have received the retirement benefits. Such is not the situation in the present case because at any time, without completion of any specified number of years of service, Silberman could have received the retirement benefit upon becoming disabled. Thus, Silberman had continuous present protection, whereas in *Gray* if the decedent had any protection at all, it was only in futuro. Therefore, in the instant case, what Judge Aldisert found lacking in *Gray* cannot be said to be lacking here, since all of the elements of § 2039 are met, and support the mandate of Congress which requires inclusion of such amounts in a decedent's gross estate. Accordingly, the commuted value of Mrs. Silberman's life estate was properly in-

cluded in the evaluation of Mr. Silberman's gross estate, and judgment will be entered in favor of the defendant and against the plaintiff.

This Opinion incorporates Findings of Fact and Conclusions of Law required by Rule 52 of the Federal Rules of Civil Procedure.