ESTATE OF MARTIN F. BENNETT, DECEASED, MIRIAM FALLON, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bennett v. Commissioner
Docket No. 32267-84.
United States Tax Court
T.C. Memo 1986-425; 1986 Tax Ct. Memo LEXIS 183; 52 T.C.M. (CCH) 425; 7 Employee Benefits Cas. (BNA) 2211; T.C.M. (RIA) 86425; September 10, 1986. John Peter McElroy, for the petitioner. Victoria Wilson Fernandez, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined a deficiency of Federal estate tax against petitioner in the amount of $28,257.61, by notice of deficiency dated June 22, 1984. After concessions, the issue which we must determine is whether the full value of an annuity which was payable to decedent's two children by reason of his death was, under the facts of this case, fully includable in his taxable estate under the provisions of section 2039. [1]
The case was submitted on a fully stipulated basis pursuant to the provisions of Rule 122. The stipulation of facts entered into by the parties is incorporated herein by this reference and forms the basis of our findings of fact *186 herein. Petitioner is the Estate of Martin F. Bennett, deceased (hereinafter "decedent"), who died on September 1, 1980. Decedent's daughter, Miriam Fallon ("Miriam"), is the duly qualified executrix of decedent's estate, and brought the petition herein on its behalf. At the time of filing the petition herein, petitioner's residence was in Kingston, New York. Decedent's will, which was duly probated, named Miriam and decedent's son, Martin F. Bennett, Jr. ("Martin"), as the residuary legatees of decedent's estate, each of them to share equally. One of the assets of decedent's gross estate, for Federal estate tax purposes, consisted of decedent's interest in the RCA Retirement Plan of decedent's prior employer, in the amount of $104,750.95. The RCA Retirement Plan ("the Plan") is a qualified plan meeting the requirements of sections 401(a) and 2039(c)(1). In 1980, shortly after decedent's death, and pursuant to its provisions, the Plan paid a total lump sum death benefit of $104,750.95, in equal shares, to the designated beneficiaries, Miriam and Martin. Such payment was a "lump sum distribution" as defined under section 402(e)(4) (determined without regard to the third sentence *187 of section 402(e)(4)). On the joint individual income tax return filed by Miriam and her spouse for 1980, the lump sum distribution from the Plan was reported as a long-term capital gain pursuant to section 402(a)(2). Such return was filed on or before August 15, 1981, and the three-year statute of limitations pursuant to section 6501(a) for such return expired on August 15, 1984. On the individual income tax return filed by Martin for the year 1980, his share of the lump sum distribution from the Plan was originally reported as ordinary income. The three-year statute of limitations pursuant to section 6501(a) for such return expired on Paril 15, 1984. Subsequent to the filing of Martin's original return for 1980, however, Martin filed an amended return for the year 1980 on Form 1040X, on which he changed the reporting of the distribution from the Plan from ordinary income to capital gains income pursuant to section 402(a)(2). Said amended return was filed on or before April 11, 1982. As a result of the change in the reporting of his share of the Plan distribution, Martin claimed a tax refund for the year 1980 of $8,475.75, which was paid to him. The Federal estate tax *188 return filed for decedent's estate did not include the full amount of $104,705.95 in decedent's gross estate. Rather, such value was reported in the amount of $19,410.35, which constituted the estate's computation of the value of decedent's interest in the Plan at the time of death, based upon information supplied to the estate by the Plan. Both Miriam and Martin have made a "favorable income tax election" under the provisions of section 402(a)(2) with respect to their respective distributions from the Plan. [2]
Petitioner contends, apparently in the alternative, (a) that decedent's estate, in the estate tax return filed, made a valid election to claim the benefits of section 2039(c) by reporting only what it conceived to be decedent's interest in the lump sum payment; and (b) that although neither Miriam nor Martin had made the irrevocable written election required by section 2039(f)(2), they are ready and willing to do so, and that such willingness should be given effect herein, so as to permit the estate to report less than the full amount of the lump *189 sum distribution from the Plan for Federal estate tax purposes. The instant case requires us to revisit that fever swamp of statutory and regulatory provisions governing the taxation of lump sum distributions from qualified plans which we previously explored in Estate of Rosenberg v. Commissioner,86 T.C. 980 (1986). Having done so, we are in full agreement with everything which was said in that case regarding the almost incomprehensible and mind-boggling provisions of sections 2039(a), (b), (c), and (f), the interrelated provisions of sections 402 and 403, and the provisions of respondenths regulations with respect thereto. Nevertheless, having tortuously picked our way through this morass, we come to the conclusion that respondent must prevail herein as to the distribution to Miriam, but petitioner must prevail as to Martin's distribution. Under the broad heading of "annuities," section 2039(a) provides that for Federal estate tax purposes, "The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent * * *", including payments under the Plan in this case. As to the amount includable, *190 section 2039(b) provides that it shall be "only such part of the value of the annuity or other payment receivable * * * as is proportionate to that part of the purchase price therefor contributed by the decedent * * *." In determining such proportion, contributions made by decedent's employer to the Plan on behalf of the decedent shall be considered as contributions made by the decedent. Section 2039(c), as in effect at the time of decedent's death, then undertakes to exclude from the gross estate the value of an annuity or other payment * * * receivable by any beneficiary (other than the executor) under -- (1) an employees' trust (or under a contract purchased by an employees' trust) forming part of a pension, stock bonus, or profit-sharing plan which, at the time of the decedent's separation from employment (whether by death or otherwise), or at the time of termination of the plan if earlier, met the requirements of section 401(a); * * * The parties are in agreement that the RCA Retirement Plan herein was such a qualified plan under section 401(a). [3]
*191 However, as an exception to the exemption provided by section 2039(c), that section provides that "an amount described in subsection (f)" is removed from the broad exemption, and thus remains fully taxable under the provisions of sections 2039(a) and (b). As in effect in the period before us, section 2039(f) provided as follows: (f) LUMP SUM DISTRIBUTIONS. -- (1) In General. -- An amount is described in this subsection if it is a lump sum distribution described in section 402(e)(4) (determined without regard to the next to the last sentence of section 402(e)(4)(A)). (2) Exception where recipient elects not to take 10-year averaging. -- A lump sum distribution described in paragraph (1) shall be treated as not described in this subsection if the recipient elects irrevocably (at such time and in such manner as the Secretary may by regulations prescribe) to treat the distribution as taxable under section 402(a) (without the application of paragraph (2) thereof), except to the extent that section 402(e)(4)(J) applies to such distribution. [4]
*192 The lump sum distribution in the instant case comes within the provisions of section 2039(f)(1), as quoted, and accordingly would appear to be an exception to the exemption granted by section 2039(c). However, if the provisions of section 2039(f)(2) were met in this case, then the exception to the exemption would not apply, and the favorable estate tax treatment provided by section 2039(c) would apply. It is this turning on the crooked statutory trail on which we presently focus. Under the authority granted by section 2039(f)(2), implementing regulations were issued by the Treasury Department on January 21, 1981, by T.D. 7761, 1981-1 C.B. 459. New section 20.2039-4, Estate Tax Regulations, provided that the favorable estate tax treatment with respect to lump sum distributions, as provided in section 2039(c), would not be available to an estate, unless the recipient of the distribution made "the section 402(a)/403(a) taxation election" as further described in the regulation. [5] As pertinent herein, the regulation prescribed the manner and effect of making that an election as follows: (c) Recipient's section 402(a)/403(a) taxation election. The *193 section 402(a)/403(a) taxation election is the election by the recipient of a lump sum distribution to treat the distribution as -- (1) Taxable under section 402(a), without regard to section 402(a)(2), to the extent includable in gross income (in the case of a distribution under a qualified plan described in § 20.2039-2(b)(1)), * * * Accordingly, if a recipient makes the election, no portion of the distribution is taxable to the recipient under the 10-year averaging provisions of section 402(e) or as long-term capital gain under section 402(a)(2). However, a recipient's election under this paragraph (c) does not preclude the application of section 402(e)(4)(J) to any securities of the employer corporation included in the distribution. (d) Method of election. The recipient of a lump sum distribution shall make the section 402(a)/403(a) taxation election by -- (1) Determining the income tax liability on the income tax return (or amended return) for the taxable year of the distribution in a manner consistent with paragraph (c)(1) or (2) of this section, or (2) Rolling over all or any part of the distribution under section 402(a)(7). If the date the estate tax return *194 is filed precedes the date on which the recipient makes the section 402(a)/403(a) taxation election with respect to a lump sum distribution, the estate tax return may nevertheless reflect the election, as if the election had been made. (e) Election irrevocable. If a recipient of a lump sum distribution files an income tax return (or amended return) or makes a rollover contribution that constitutes the section 402(a)/403(a) taxation election described in paragraphs (c) and (d), the election may not be revoked. Accordingly, a subsequent and amended income tax return filed by the recipient that is inconsistent with the prior election will not be given effect for purposes of section 2039 and section 402 or 403. Section 20.2039-4 of the Estate Tax Regulations was amended by T.D. 7956 on May 11, 1984, 1984-1 C.B. 192, so as to provide a further method of making the irrevocable election contemplated by section 2039(f)(2), viz, by the recipient's filing a written and signed election statement. Such amendment to the regulations, however, is not applicable in the instant situation, *195 since (a) the parties have stipulated that no such written election statement was filed by either Miriam or Martin, and (b) the amendment to the regulations was made effective only on and after July 13, 1984. The situation in the present case, therefore, is to be controlled by the regulation as it existed in 1981, at the time the estate tax return herein was filed, as well as at the time when the individual income tax returns of Miriam and Martin were filed. We must therefore consider the facts with respect to Martin and Miriam separately. As to Miriam, the stipulated facts are that Miriam filed her joint return for the year 1980, and reported therein her 50 percent share of the lump sum distribution from the Plan as long-term capital gains income. This was not "the section 402/403 election" as specified by section 20.2039-4 of the Estate Tax Regulations, and no such election has ever been filed. Even if it were now so filed, we would consider it to be ineffective, as being inconsistent with the treatment accorded in her original and unamended return, as well as inconsistent with the section 402(a)(2) election which she had previously made. Estate of Rosenberg v. Commissioner,supra. *196 [6] Miriam never attempted to amend her return for 1980 so as to make the "section 402(a)/403(a) election," either before or after the statute of limitations expired with respect to such return, and there are no facts in this case which would justify granting the type of relief which the court found proper in Martin v. United States638 F. Supp. 1220 (C.D. Cal. 1986). We thus conclude that as to the distribution from the Plan to Miriam, no valid election under section 2039(f)(2) was made, and accordingly respondent was correct in including the full amount of the lump sum distribution in petitioner's taxable estate, to the extent of Miriam's ratable share. The situation with respect to Martin, however, is different. *197 Martin timely filed his individual income tax return for 1980, in which he reported his share of the lump sum distribution from the Plan as ordinary income. Under the provisions of the Estate Tax Regulation which we have guoted above, and as it was in effect at that time, this act constituted an irrevocable election by Martin to treat his share of the lump sum distribution as ordinary income, and he did so. Martin's later amendment of his 1980 individual income tax return, so as to show this distribution as long-term capital gains income, was ineffective to change that irrevocable election, under the clear provisions of section 20.2039-4(e) of the Estate Tax Regulation, and is not to be given effect. The situation here is thus distinguishable from the facts in Estate of Rosenberg, and the stipulated fact that he had filed another election of favorable income tax treatment for income tax purposes under section 402(a)(2) must be considered a nullity or revoked. [7] Whatever effect such election had on Martin's income tax liability, it was plainly ineffective to change the estate tax results. Whether respondent made a mistake in refunding income tax to Martin, based upon his amended *198 1980 return, we do not decide in this case. Martin is not a petitioner before us. Since we hold that Martin made a valid and irrevocable election under section 2039(f)(2) with respect to his distributive share, and since we also hold that Miriam did not do so, it results that the estate tax liability herein must be recomputed in accordance with the provisions of section 20.2039-4(f) of the Estate Tax Regulations, which provides: (f) Lump sum distribution to multiple recipients. In the case of a lump sum distribution paid or payable under a qualified plan with respect to the decedent to more than one recipient, the exclusion under § 20.2039-2 applies to so much of the distribution as is paid or payable to a recipient who makes the section 402(a)/403(a) taxation election. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. So stipulated by the parties. The exact timing and manner of making of such election is not disclosed in this record.↩
3. In the case of annuities covered by sec. 2039(c), this section reverses the presumption of sec. 2039(b) by providing that contributions by the decedent's employer on decedent's behalf shall not↩ be considered to be contributions made by decedent, and that such annuities shall be reported only in proportion to decedent's contributions to the plan.
4. Sec. 2039(f), as quoted herein, was added to the Code on November 6, 1978 by sec. 142(b), Pub. L. 95-600, 92 Stat. 2796, effective for the estates of decedents dying after December 31, 1978. These provisions were thereafter amended at least two different times, Technical Corrections Act of 1979, Pub. L. 96-222, 94 Stat. 201, and Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2377, but each such amendment was made effective for periods which did not affect decedent's estate herein, and subsection (f) was then finally repealed by a third act of Congress, but the repeal was made effective only where the decedent died after December 31, 1984. Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 873.↩
5. The so-described election is that referred to in sec. 2039(f)(2).↩
6. As previously noted in our findings, the parties stipulated that both Miriam and Martin had made a "section 402(a)(2) favorable income taxation election," without specifying how or where this was done. We must assume that the election referred to in that stipulation was made under sec. 11.402(e)(4)(B)-1, Temporary Income Tax Regs., 40 Fed. Reg. 1016↩ (Jan. 6, 1976), which has no application to estate taxes but only to income taxes.
7. See sec. 11.402(e)(4)(B)-1(c)(3), Temporary Income Tax Regs., 40 Fed. Reg. 1016↩ (Jan. 6, 1976).